Thank you, Your Honor. We're going to reserve two minutes, thereabouts, and if we get our two minutes, we get there. Judge Graber, Judge Watford, Judge Friedman, may it please the Court. I'm here today representing FibroGen, who is seeking reversal. Would you introduce yourself for the record, please? I'm sorry, Your Honor. Phil Hirshhorn from Buchanan Ingersoll. FibroGen today is asking this Court to reverse an order of the District Court granting discovery pursuant to 28 U.S.C. Section 1782, which discovery is looking into FibroGen's highly confidential and effectively the crown jewels of their research and development efforts over more than a decade, representing hundreds of millions of dollars and of extreme benefit to anybody who happens to go in and find both the good and the bad results that are found there. And there are really three grounds that we're looking to reverse that decision on. The first is an issue of first impression, is whether Akebia even has standing to bring the application that they brought to the District Court. The second is whether two international or foreign patent administrative proceedings are, quote, unquote, tribunals under Section 1782. And we contend, again, that this is an issue of first impression. If you look at the Intel case and you look at the what is a tribunal under the case law, you'll see that these proceedings are not tribunals under the statute. And thirdly, we're looking at the issue of abuse of discretion by the District Court in the consideration of other discretionary factors. And the discretionary factors here are very important and are really a big part of the statute. And in this case, the judge declined to consider the discretionary factors and said so in the record, in the oral statement from the bench on January 14th. Kennedy. I don't think he considered the Intel factors. Carvin. He did not. Well, we don't know what he actually may have considered, but he did not consider them in writing. He did not consider them on the record. He mentioned them in writing. Sotomayor. What requirement is there for him to issue a written opinion as distinct from reading all of your materials, thinking about them, and telling you what the answer is? Carvin. I think when you look at the Maxwell v. Lucky construction case, which deals with an issue of when you have a situation where you're applying discretion, you have to demonstrate that you're actually considering factors. That wasn't my question. Is there a case that required him to issue a written decision? I don't believe that there's a case specifically that says you have to issue a written decision. Okay. So the fact that it's not written is gets you nowhere. Well, I think it gets you nowhere. Where in the record did he say, I declined to consider the discretionary factors? I believe it was at, I'm looking at page ER-10. It says, But those factors not exclusive nor mandatory in the court is not required and, in fact, declines to undertake the extensive efforts required to determine what types of evidence the EPO and JPO would or would not consider, among other things. Effectively, when we argued to the district court, we were seeking That's not saying I'm declining to consider the intel discretionary factors or any other discretionary factors. He's saying I'm not going to figure out what types of evidence they would consider. And didn't he also say in some oral discussion with counsel that the question for me is not what will they admit, the question for me is whether or not to order you to produce it to the other side and to enter in a protective order to protect the very kind of trade secrets and confidential information you're concerned about. And if Akebia violates this protective order, they'll have me to answer to, regardless of what kind of evidence those foreign tribunals will admit. Isn't that really the state of the record? Well, I think, Your Honor, I think part of that is true. I think he did analyze part of the burden issue, and we did have a protective order issue, which still doesn't go far enough. But we still look at the factors were not considered that Fibrogen is a party to the proceedings in both the European Patent Office and in the JPO, that there were rules related to discovery. This was all brought to the Court's attention, correct, in your arguments? Yes, Your Honor. And don't we presume, unless there's clear evidence to the contrary, that the Court has read and considered and dealt with everything that is brought to the Court's attention? Your Honor, I think that presumption can be made in some instances, but I think this Court needs a written record, just as the parties do, to understand how the exercise of discretion is occurring. Going back to the Maxwell case, there were statutory – there were factors related to attorneys' fees, and what happened is the Court just granted attorneys' fees without looking at the factors, without providing a record. And the Court actually, de novo, looked at the factors and made determinations and lowered an attorney's fee award in that case. The same thing should happen here. This Court can look at the record and make a determination here and actually determine that Fibrogen should not be producing this information. But really, when we look at all of this, it goes back to the issue of does Zucchini even have standing to be here. This is Article III standing or prudential standing? This is Article III standing, Your Honor. This is really a case or controversy issue, because you have – at this point in time, you have a very – there is no injury in fact that Akibia has or has suffered or has been able to present. Well, sure it has, because it needs the information and it isn't getting it. Well, that's not – excuse me, Your Honor. Why isn't that a statutory injury when the statute says if you're an interested person, you get this information, and they haven't gotten it? So under the statute, they've been injured, and they've been injured in the real world in their ability to deal with this patent argument that's being made. Your Honor, I think when you're looking at this idea of a statutory injury, I think Congress's intent is much more clear and says, actually, you get an injury, you get a cause of action if these things don't happen. Here, that's not the case, and there's no right that Akibia has to discovery. They have a right perhaps – or they don't even have a right to discovery at all. They don't have an injury in fact. They can't even be in the court to begin with. When you look at this, you know, the idea of injury in fact looks at what's the harm to Akibia? In the proceeding that we're talking about, Akibia doesn't have any skin in the game, is the way we put it at different times. They don't have any like – Can I just ask you – I'm sorry to jump in. Yes. But one thing that I don't understand about your Article III argument is you seem to say that it would not apply if the request comes from a foreign or international tribunal, and I don't understand how we could read the statute to require injury in fact by the foreign tribunal, but, you know, in order for Article III to apply. So maybe you could just address that component of the statute, even though it's not at issue here. Well, Your Honor, we did footnote that, and I think it's really not at issue here, but I'll address that. Your footnote wasn't persuasive, and that made me think that maybe your understanding that Article III even applies here is wrong. Well, Your Honor, I think when we're looking at most of those cases that I've seen, it's a situation where there's an investigation to go to a pending criminal action, or there's a pending criminal action, or the court has a proceeding before it. Those have been the situations in these cases. All of them would actually implement the idea of having some sort of standing on behalf of the government or the tribunal or effectuating whatever standing there is from the underlying proceeding. But the fact that a foreign tribunal suffers, under your theory, when it comes to the court and says, hey, we need this discovery under 1782. I think under my theory, Your Honor, it's looking at the State's interest in investigation and prosecution of a potential, you know, a potential proceeding in the future or an actual proceeding that's ongoing. And so the cases would be How is that tribunal, under your theory, any differently situated from akibea here, then? Well, they're representing the State's interest, and they have a very particular interest in protecting against crime or protecting against tax penalties or whatever it may be. Akibea doesn't have any interest in this. They don't have anything to lose in those proceedings. They don't lose the right to challenge validity at some later time. They're just in a position where they don't have a product in the market. They have no – there's no hint of infringement. There's no hint of an infringement action. But if they had brought a – I don't know what tribunal it would be, but let's say it's different from this administrative tribunal. But some foreign court, they had brought a declaratory judgment action seeking to have your patents declared invalid. If they could do that, they may indeed have case or controversy. That's a different case because it deals with the situation where they may actually have some substantive rights at stake, because if they lose, they'll be bound, perhaps by areas like res judicata and the thing like that when you start that. They were the ones, though, that initiated these – I don't know if they're called opposition proceedings or what it's called in the other one, right? But they're the ones who initiated this proceeding. They did initiate these proceedings, and anybody can. You can. I can. Anybody anywhere can, just like we can in the patent office in the United States. But that doesn't necessarily give us standing to do something beyond that. These are administrative proceedings like going to an Article I agency. And it's the same thing here. And that's what Akibia has done. They've gone to effectively what's an Article I agency in Europe and in Japan. And so you end up with a situation where they really don't have any skin in the game. They may want a particular result, but wanting a result is not the same thing as having an injury in fact, which is necessary for this court. I see I have almost no time left on my rebuttal. That's true, but we'll give you a minute or so when the time comes, because we've used a lot of your time with questions. Do you have any more questions for right now? Not right now. Okay. Thank you, Your Honor. May it please the Court, Lawrence Rosenberg for Akibia. The district court correctly and reasonably exercised his discretion in ordering discovery in this case. Fibrogen's mostly novel arguments on appeal are contravened by the statute, the law, and the record. Turning first to the factors, I think the court explored this with the opposing counsel. The court did hold a hearing. All of the relevant factors, the intel factors, the statutory factors that were at issue were discussed. The judge asked counsel questions about those factors. And then the court concluded based on its prior colloquy that the factors were satisfied and that in his discretion he was going to order the discovery. There's nothing wrong about that. There's no requirement that he issue a written decision. And importantly, in 1782 cases, there is sometimes great urgency. I've been involved in cases where there was a hearing occurring in three weeks in the foreign tribunal, and it is often important for the court to be able to act quickly. And so a written decision requirement, I believe, would be contrary to the purposes of the statute in some cases. Alito, can I ask you this, though? Why wasn't the district court required to give more weight here to the fact that Fibrogen is a party to the proceedings in the foreign tribunal? Presumably, if that tribunal was really interested in hearing this evidence, it could order the production of it over there. Why should the district court here sort of jump in and intervene? Judge Wadford, the way that factor has been applied in the case law, and I would to the Horaeus case from the Seventh Circuit and the Third Circuit, the Lufthansa case from this Court previously, is that even if the party is part of the proceeding, if that proceeding doesn't have discovery procedures simply because they didn't think to implement them or it wasn't part of the culture of the country where the proceeding is taking place, there isn't a sort of weight against discovery in those circumstances.  In the 1782 case, Fibrogen's expert testimony presented to the district court that there was no procedure in either the EPO or the JPO to actually get this discovery, but that the EPO and JPO would be receptive to it. There was nothing that prohibited it. And, in fact, by the way, since then, the EPO has actually accepted the limited discovery that Fibrogen did produce in the 1782 case. These were documents about an ownership issue in the EPO case that was presented to the EPO a few months ago, and that has now been docketed in the EPO. So it's accepted that evidence. But there really is no procedure to get this in either of those tribunals. To give you an example, Germany, which a number of these 1782 cases involve, has very limited discovery procedures. But, nonetheless, in the Horaeus cases, discovery was ordered, it was provided, and in the Frankfurt Court of Appeals this past summer, the Court issued a decision in Horaeus' favor based almost entirely on the 1782 evidence, even though it doesn't really have procedures that would allow that or would provide for that evidence to be ordered by the Court. The statute says that the district court may order production of documents or other things for, quote, use in a proceeding in a foreign tribunal. Yeah. So that's been interpreted to mean even if there's no evidence that it could actually be used, that it should still be ordered, disclosed under 1782? Well, the party has to make a showing that it intends to use it. I think that if there's no basis to say they're going to use it, then it's like you try to use it. And the way that's been interpreted is this sort of authoritative proof standard that came out of the Urameipa and Malev cases in the Second Circuit, that unless there's authoritative proof that the Court would reject it, it should be ordered, discovered. And I would note that there are a couple of instances where that's happened. In the Schmitz case, a German prosecutor sent a letter to the Court and said, this is evidence related to an ongoing criminal investigation. Please don't provide it because it's going to mess up my investigation. And in the Lufthansa case, in this Court, the German Court in that case had specifically rejected a request for the documented issue, which is one of the documents within the limited discovery provisions of the German courts. And in that case, that was a sufficient basis to deny discovery, although there were other reasons in that case to deny it. But let me ask you this. Just when we go back to the passage that your adversary pointed us to from the district court's proceedings, I mean, the Court expressly said, I'm not going to try to figure out whether this evidence that your client is requesting would or would not be admitted over there. Doesn't the Court at least have to make some, you know, preliminary determination that at least this is within the ballpark of what they would take? I don't think they have to do it in writing or expressly do it. I would note that if you look at the record prior to that statement, the Court did specifically ask counsel, is this going to be admitted? Should the lack of these discovery procedures indicate that the court's not receptive? And counsel explained in detail that that wasn't the case. And there was pretty overwhelming evidence, I think, before the district court, that there was no proof-gathering restriction, that there was no reason that the court would not be receptive to this. And as I say, as we now know, the EPO at least has accepted the information that's already been provided. It's the one piece that Fibrogen didn't resist in producing. So I think that whatever requirement there is for the court to consider that, it was considered here. I certainly don't think there would be a reason to remand to state explicitly what the court clearly was doing on the record. So I think that, you know, while the intel factors are not mandatory, and I think the court was correct, I do think the court, in fact, did consider every one of the intel factors when you look at the record. And I think given that, it was a proper exercise of discretion, and there's no basis to reverse on that ground. If there are no other questions on that, I'll move briefly to the standing argument. Kennedy. Did the district court consider the argument that this was an overbroad and burdensome request and very, very costly? Absolutely. I mean, the court spent 10 pages of the transcript after its summary ruling talking about that with counsel and then held a second hearing to go over this very strict protective order. The court considered an affidavit submitted by Fibrogen about the cost and found it not credible because of certain statements in the affidavit, but nonetheless, worked with the parties to significantly limit, we believe, the discovery requested. Really, the discovery that's at issue is test data. And opposing counsel made some comment that this is the crown jewels of the company. They already submitted the positive test data to these bodies. The question is that for a number of these compounds, you know, there are billions of compounds at issue, they have data that shows that they don't have the claimed biological activity. Well, whether it's the crown jewels or not, the protective order is designed to prevent someone else from making use of the crown jewels. Absolutely. And the district court made very clear that he was going to scrupulously and stringently enforce the protective order. With respect to the standing argument, first of all, this is an extremely novel argument. This has never been accepted by any court, and I think there's good reason. I think, Judge Graber, you made the point that they're standing because this is an informational statute, 1782. Fibrogen refuses to provide the information. So you have a harm, the lack of information. The causation is that Fibrogen won't provide it, and the court can redress that problem by ordering the information provided. There's nothing more that's required for Article III standing. I think it's very clear that in this case what this really is is sort of a dressed-up prudential standing argument, which really devolves to whether Akibe is an interested person. If it's prudential, that's why I asked him the question. If it's a prudential standing argument, they clearly lose under Lexmark, right? Yeah, exactly, exactly. Under that, and they also waived it, but yeah. And they never challenged Akibe's status as an interested person in the district court, and Akibe is plainly an interested person. In Intel, the court made clear that if you have participation rights in a foreign proceeding, you're an interested person. And not only do we have participation rights, we brought the proceeding. So there's no question that we're an interested person. Yes, I'm stuck on why would Article III standing analysis even apply in this context? It wouldn't. It absolutely wouldn't. There's no reason. It's a foreign proceeding. Article III looks at what a U.S. court can redress, right? A U.S. court can't redress anything in a foreign proceeding, at least not in almost all foreign proceedings. So it doesn't apply at all. Well, it applies to the proceeding here. Yeah. So I couldn't walk in and ask for this information because I have no interest in anything. It wouldn't matter. So there has to be some connection. Right. And the work is done by the statute, right? You have to be an interested person. If you're not an interested person, if the foreign tribunal, and this is where it comes into why it's not a U.S. Article III inquiry, it's the foreign tribunal.  to argue with that. But when you invoke the power of the federal court here to get the discovery, you do have to demonstrate that something gives you the right to it and it's been withheld, which is what you... Yeah. So that's apart from what you might have to show with respect to the tribunal. Yeah, exactly. And if the court's concerned about this, we plainly have a real stake in this proceeding. Not only did we bring it, but on page 7 of Fibrogen's opening brief, they state two things. They state, number one, that our compounds are within the class of compounds that their patents claim. And then, number two, they say the reason they've gotten these patents is to protect their patent portfolio. I mean, even if the reasonable apprehension of suit test that was the test for declaratory judgment standing in the U.S. pre-med immune were the test, we'd have a reasonable apprehension of suit given the statements made in their own brief. So we clearly have a personal stake. Thank you, counsel. Thank you very much. Mr. Hirshhorn, we'll give you an extra minute. Thank you very much, Your Honor. Let me, if I could, just start at the end with the standing issue. It's clear that Akebia is looking for a vast expansion of the standing rights under Section 1782. There's never been an application to a proceeding like this to the JPO or to the EPO or any other patent office proceeding going on outside of the United States. And I think when we look at standing and we look at what Akebia's role is in that case, they say there's an interest. They say they have harm. There is no harm. They could not do a DJ in the United States. They couldn't do a declaratory judgment action anywhere else in the world. So I think the idea that they have some injury, in fact, is just not there. And we also have to look at the tribunal itself. And these tribunals are unlike the Intel Tribunal where they were looking at something that actually imposed fines and penalties and bind the parties, where AMD was actually in effectively a zone of danger from the anti-competitive conduct of Intel. The net effect here is in the EPO proceeding, the only thing that the administrative offices of the EPO and the JPO can do is to effectively say that Fibrogen does or doesn't still have a property interest that expands the full scope of the claim. It doesn't affect Akebia at all. They don't gain or they don't lose. I see that my time is up. Thank you, counsel. The case just argued is submitted, and we appreciate very much the helpful arguments from both counsel.
judges: Friedman, Graber, Watford